UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul Bruce CARPENTER,
Defendant–Appellant.

No. 90–10641.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1991.

Submission Vacated Feb. 18, 1992.

Resubmitted March 23, 1992.

Decided April 9, 1992.

Merrick Scott Rayle, Beverly Hills, Cal., for defendant-appellant.

John P. Panneton, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before: NORRIS, BEEZER, and LEAVY, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Former California state senator Paul B. Carpenter appeals his conviction on four counts of racketeering, extortion, attempted extortion, and conspiracy to commit extortion. Because the district court erred when it instructed the jury that no explicit quid pro quo was required to establish "official right" extortion under the Hobbs Act, we reverse Carpenter's conviction on all four counts.

I

On March 15, 1990, a federal grand jury returned an indictment charging Carpenter with four counts of racketeering, extortion, attempted extortion, and conspiracy to commit extortion. On August 3, 1990, a superseding indictment was filed containing the same charges. Count I of the superseding indictment charged Carpenter with racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), based on six predicate acts. The first predicate act involved Carpenter's alleged acceptance of a $20,000 campaign contribution from an FBI agent to ensure passage of AB 3773, which the indictment alleged to be a violation of California Penal Code § 86. The other five predicate acts involved separate instances in which Carpenter allegedly pressured lobbyists to make contributions to him. Each of these five acts was alleged to be attempted extortion under color of official right in violation of the Hobbs Act, 18 U.S.C. § 1951(b)(2).

Count II of the superseding indictment charged that Carpenter's acceptance of $20,000 to ensure passage of AB 3773 constituted extortion under color of official right in violation of the Hobbs Act. Count III charged that Carpenter conspired with his aide John Shahabian to commit extortion under the Hobbs Act in connection

with AB 3773. Count IV charged Carpenter with attempted extortion in violation of the Hobbs Act for trying to induce payment from a lobbyist for the California Correctional Peace Officer's Association.

The jury convicted Carpenter on all four counts. He was sentenced to concurrent prison terms of 12 years on the first three counts. The sentence for count IV was suspended and Carpenter was placed on probation for three years. This appeal followed.

## II

Carpenter argues that the district court committed reversible error when it instructed the jury that the government was not required to prove an explicit quid pro quo in order to establish "official right" extortion under the Hobbs Act. If Carpenter is correct, we must reverse his conviction on all four counts. Counts II, III, and IV all charge violations of the Hobbs Act. Count I charges Carpenter with racketeering based on six predicate acts, five of which are Hobbs Act violations. Since the government must prove at least two predicate acts to constitute a "pattern" under RICO, *see* 18 U.S.C. § 1961(5), Carpenter's conviction on count I must be reversed if the Hobbs Act predicates are invalid.

■■■ In *McCormick v. United States,* —— U.S. ——, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), the Supreme Court held that receipt of campaign contributions would violate the Hobbs Act "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *Id.* 111 S.Ct. at 1816.[1] Although *McCormick* was decided after the jury verdict in Carpenter's case, it applies retroactively to all cases pending on direct appeal. *United*

States *v. Montoya,* 945 F.2d 1068, 1071 (9th Cir.1991).

■■■ In *Montoya,* we held that it was error to instruct the jury that "[t]he Government is not required to prove that the defendant demanded or directly solicited the payment made or that he offered anything specific in return for it." *Id.* at 1073. The instruction given in Carpenter's case is indistinguishable: "there need be no specific quid pro quo to establish extortion under color of official right; that is, the Government need not prove that the defendant promised to do anything in particular in return for the payment of money." This instruction was error because it removed from the jury *McCormick*'s requirement of an explicit quid pro quo. The error is not harmless because it created a reasonable possibility that Carpenter was convicted for activity that is not a crime. *Accord Montoya,* 945 F.2d at 1074. Accordingly, we reverse Carpenter's conviction on all four counts.[2]

## III

Carpenter also contends that there was insufficient evidence to convict him on each of the four counts. We must address this contention to determine if retrial on any of the counts is barred by the Double Jeopardy Clause. *Montoya,* 945 F.2d at 1074. We will not hold that the evidence was insufficient if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

## A

In addressing the sufficiency of the evidence in this case, the principal question is

---

1. This case involves not only alleged promises but also alleged threats involving official action, which will be common in cases of *attempted* extortion. *McCormick*'s requirements of explicitness and of a connection to an "official act" logically apply not only to promises but also to threats.

2. We need not reach Carpenter's contention that the jury instructions were deficient in other

respects or that the First Amendment would bar his conviction under California Penal Code § 86 or under RICO when a violation of § 86 is alleged as one of the predicate acts. We also need not address Carpenter's contention that he was denied his Sixth Amendment right to a jury trial when the district judge excused one of the jurors for cause.

whether the evidence was sufficient to meet the explicitness and "official act" requirements of *McCormick*. Carpenter argues that the explicitness requirement cannot be met unless an official has specifically stated that he will exchange official action for a contribution. We disagree. To read *McCormick* as imposing such a requirement would allow officials to escape liability under the Hobbs Act with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money.

■ In our view, what *McCormick* requires is that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain. We noted in *Montoya* that the explicitness requirement serves to distinguish between contributions that are given or received with the "anticipation" of official action and contributions that are given or received in exchange for a "promise" of official action. *Montoya*, 945 F.2d at 1073 (quoting *McCormick*, 111 S.Ct. at 1818 (Scalia, J., concurring)). When a contributor and an official clearly understand the terms of a bargain to exchange official action for money, they have moved beyond "anticipation" and into an arrangement that the Hobbs Act forbids. This understanding need not be verbally explicit. The jury may consider both direct and circumstantial evidence, including the context in which a conversation took place, to determine if there was a meeting of the minds on a quid pro quo. As we read *McCormick*, the explicitness requirement is satisfied so long as the terms of the quid pro quo are clear and unambiguous.

■ In addition to explicitness, *McCormick* requires that the quid pro quo involve an "official act." *McCormick*, 111 S.Ct. at 1816. The government argues that granting or denying a lobbyist access to present her views constitutes an "official act." We disagree. *McCormick* refused to attribute to Congress an intent to criminalize behavior that is "unavoidable so long as election campaigns are financed by private contributions" and has "long been thought to be well within the law." *Id.* *McCormick*

gave as an example the soliciting of contributions from constituents who had recently benefited from legislation, *id.*, and the same may be said of granting or denying access to an elected official's time based on levels of contributions. As Carpenter's counsel brought out repeatedly at trial, there are several times as many lobbyists in Sacramento as there are state legislators. Elected officials must ration their time among those who seek access to them and they commonly consider campaign contributions when deciding how to ration their time. This practice "has long been thought to be well within the law [and] in a very real sense is unavoidable." *Id.* Accordingly, we hold that granting or denying access to lobbyists based on levels of campaign contributions is not an "official act" within the meaning of *McCormick* and cannot, by itself, form the basis for a charge of extortion or attempted extortion under the Hobbs Act.

■ We recognize, however, that granting or denying access based on contributions may occur in such a context that it sends a clear and unambiguous message that a legislator is conditioning his support for legislation on those levels of contributions. Under such circumstances, granting or denying access may be evidence from which a jury could find that a legislator was conditioning his support for legislation on the receipt of contributions. Agreeing to support legislation in return for contributions is entirely different from granting or denying access. Agreeing to vote for or against legislation in exchange for a contribution clearly falls within the ambit of the Hobbs Act, for voting is a legislator's quintessential "official act." Likewise, agreeing to intervene with one's colleagues to secure their support for legislation involves an "official act." The effectiveness of such intervention depends in large measure on a legislator's ability to exchange his support on future legislation for his colleagues' support on pending legislation he favors. Thus, the legislator's vote lies at the heart of this practice as well.

**B**

■ With these observations in mind, we consider the sufficiency of the evidence

against Carpenter. We begin with Carpenter's convictions on counts II and III for extortion and conspiracy to commit extortion in connection with AB 3773. As part of an undercover investigation, FBI agent Jack Brennan posed as an Alabama businessman seeking a change in California law. Brennan met with Carpenter's aide John Shahabian several times between July and September of 1986 to discuss AB 3773.[3] Brennan asked "what it's going to cost" and Shahabian responded with a figure of $20,000. Shahabian told Brennan that Carpenter would be the best person to "front" the legislation. Shahabian testified that he later told Carpenter about AB 3773, that Brennan would need help solving legislative problems, and that Shahabian had suggested a contribution of $20,000. Shahabian testified that Carpenter responded that he would assist the bill through the Senate. In conversations with Brennan, Carpenter assured him that things were going smoothly and that Carpenter had the "right friends" on the Banking and Commerce Committee. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have found that Carpenter made an explicit promise to support AB 3773 and to intervene with his colleagues on behalf of the bill in exchange for a campaign contribution of $20,000. Accordingly, we reject Carpenter's argument that the evidence was insufficient to support his conviction on counts II and III.

## C

We turn next to Carpenter's conviction for racketeering under count I of the indictment. Five of the six predicate acts alleged in count I had no connection to AB

3773 but rather involved separate instances in which Carpenter pressured lobbyists to make contributions to him. Each of these five acts was alleged to violate the Hobbs Act.[4] A conviction for racketeering under RICO requires the government to prove at least two predicate acts beyond a reasonable doubt. *See* 18 U.S.C. § 1961(5).

Testimony regarding four of these five predicate acts described essentially the same situation.[5] In each case a lobbyist met with Carpenter to discuss specific legislative action that was of interest to the lobbyist's client. Carpenter refused to discuss the legislation and instead reviewed the lobbyist's or the client's record of contributions to him. Carpenter called each meeting to a halt without giving the lobbyist a chance to discuss the legislative matter. The government asserts that Carpenter's refusal to give the lobbyists the chance to present their views on legislation was official action, which Carpenter explicitly conditioned on the receipt of contributions. As we have already noted, we reject the government's assertion that granting or denying access, by itself, constitutes an "official act." We recognize, however, that the denial of access in some situations may be probative circumstantial evidence on the issue whether the legislator's support is conditioned on the receipt of contributions. When a legislator refuses to discuss *specific* legislation for the explicit reason that a lobbyist or client has not made sufficient contributions, a rational jury could conclude that the legislator was clearly and unambiguously conditioning his support on the receipt of contributions. Viewing the evidence presented at trial in the light most favorable to the prosecution, we conclude that the evidence was sufficient on predicate acts two through five to meet the requirements of *McCormick*.

**3.** As an unindicted co-conspirator, Shahabian's acts and statements in furtherance of the conspiracy may be attributed to Carpenter. *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). Moreover, Carpenter explicitly told Brennan that Shahabian spoke for Carpenter.

**4.** While Carpenter's activities in connection with AB 3773 were alleged to violate the Hobbs Act in count II of the indictment, they were alleged

to violate only California Penal Code § 86 in count I.

**5.** Predicate act two involved a lobbyist for the Western Grower's Association. Predicate act three involved a lobbyist for the Charles Drew Postgraduate Medical School. Predicate act four involved a lobbyist for American Medical International. Predicate act five involved lobbyists for the California Correctional Peace Officers' Association.

With respect to predicate act six, we conclude that the evidence was insufficient because the lobbyist, who was employed by Hamilton Test Systems, could not recall whether he was meeting with Carpenter to discuss a specific legislative matter. The lobbyist's testimony was sufficient for the jury to find that Carpenter was conditioning access to his time on the receipt of contributions but no more, and conditioning access to one's time does not, by itself, constitute an "official act" under *McCormick*. However, since the RICO conviction may be sustained if only two of the predicate acts are proved beyond a reasonable doubt and since the evidence was sufficient to meet the requirements of *McCormick* for four of the predicate acts, we reject Carpenter's argument that the evidence was insufficient with respect to count I.[6]

### D

We turn finally to the sufficiency of the evidence with respect to count IV, which involved the same instance of pressuring lobbyists for the California Correctional Peace Officers' Association that forms the basis for predicate act five. The evidence is sufficient to meet the requirements of *McCormick* with respect to count IV for the same reason it is sufficient to establish that predicate act five was a Hobbs Act violation. The evidence shows that Carpenter refused to discuss specific legislation for the explicit reason that he had not received sufficient contributions. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that Carpenter was clearly and unambiguously conditioning his support for the legislation on the receipt of contributions. Accordingly, we reject Carpenter's argument that the evidence was insufficient with respect to count IV.

### IV

Carpenter also asks that we dismiss his indictment for outrageous govern-

ment conduct, citing *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). This court has "interpreted *Russell* extremely narrowly." *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir.1989). Indeed, this court has dismissed an indictment for outrageous conduct only once. *See Greene v. United States*, 454 F.2d 783 (9th Cir.1971) (dismissing indictment for bootlegging where government had initiated contact with defendants, offered to supply necessary equipment and an operator for still, supplied defendants with large amount of sugar, and served as defendants' sole customer). Carpenter's claims of misconduct fall far short of what is necessary to dismiss the indictment.

### V

For the reasons stated herein, Carpenter's convictions on counts I through IV are REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

**6.** Carpenter's separate contention that the evidence is insufficient to prove a "pattern" is meritless. Viewed in the light most favorable to the prosecution, the evidence was clearly sufficient to establish both a relationship among predicate acts and the threat of continuity. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989).