988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rudolpho MONTOYA, Defendant-Appellant.
 No. 88-5472.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 6, 1992.*
Decided March 1, 1993.
 
 Appeal from the United States District Court for the Central District of California, No. CR 88-456-WMB-1; Wm. Matthew Byrne, Jr., District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before HUG, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Rudolpho Montoya appeals his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Because none of Montoya's five arguments on appeal are meritorious, we affirm his conviction.
 
 I. Facts
 
 3
 Montoya's conviction in this case stems largely, if not exclusively, from his contact in April 1988 with a government confidential informant identified as "Hugh Winchester." Most of these contacts were tape recorded by the government. On April 7, 1988, according to Winchester, Winchester told Montoya and co-defendant Jaime Baxter that he knew of some people who wanted to exchange $73,000 in $300 money orders for cocaine. This particular meeting was not tape recorded.
 
 
 4
 On April 13, Winchester gave (or discussed giving) Montoya a sample of the money orders. On April 14 and April 16, the two men spoke by phone; evidence was presented at trial that their conversation was coded, and that, for example, "box" referred to a kilogram of cocaine. Winchester and Montoya talked face-to-face on April 21. During the conversation, Montoya told the government's informant about "the new law." He was discussing § 841(b), and stated one could get up to life in prison for possession of anything over five kilograms.[1]
 
 
 5
 Additional conversations between the two men took place on April 22 and April 25. On April 26, co-defendant Baxter met with Winchester and an undercover agent to complete the planned cocaine deal. Baxter delivered three packages of cocaine, and was arrested. Montoya was arrested shortly thereafter.
 
 
 6
 Montoya was indicted on May 24, 1988. Count One of the indictment charged conspiracy to distribute narcotics in violation of 21 U.S.C. § 846, and Counts Two and Three alleged possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Following a jury trial at which Montoya was convicted on all three counts, the trial judge sentenced him to a prison term of eighteen years. We have jurisdiction over Montoya's appeal pursuant to 28 U.S.C. § 1291 (1988).
 
 II. Discussion
 
 7
 A. Montoya's discovery requests.
 
 
 8
 Generally speaking, we review de novo district court rulings on the government's duty to produce evidence under Brady v. Maryland, 373 U.S. 83 (1963). United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992). When the issue, however, is the defendant's right to particular evidence submitted to the district court for its review under Brady, the district court's rulings are reviewed for clear error. Id. A third standard is implicated in cases involving disclosure of an informant's identity; there, we review for abuse of discretion. Id. at 1012 n. 3.
 
 
 9
 Montoya contends that the government did not turn over all the Brady material it had. Specifically, he argues that the government did not turn over all the tape recordings it had of telephone calls and meetings pertinent to the case. He is particularly upset that "[t]he government has purposely with-held [sic] the tape recording of the monitored conversation of April 7, 1988, because it would show the innocence of Defendant-Appellant."
 
 
 10
 The government denies that it withheld the information Montoya seeks. Point blank, it asserts that "[a]ll recordings were disclosed to defendants' attorneys. The initial recording which he claims existed, did not. Therefore, it could not be disclosed." Further, the trial judge ruled "[t]he government has the obligation of screening [all the evidence] for Brady material or for Jencks material, and they obviously turned over more than they had to turn over to you."
 
 
 11
 Montoya also "request[ed] material as basic as the informant's true name, prior instances of deceit and fraud which were known to the government, instances of his prior co-operation [sic] with the government, and impeachment material contained in his previous presentence report and parole commission reports." The district court ordered disclosure of only the informant's prior convictions after reviewing in camera materials submitted by the government.
 
 
 12
 The government staunchly defends its disclosure practices; "[d]efendant was not denied any material information which could have been used for impeachment. Except for disclosure of the confidential informant's original name and the names of targets in ongoing investigations, the government gave full disclosure."
 
 
 13
 The trial court did not abuse its discretion in keeping Winchester's true name from Montoya, since Winchester was involved in several ongoing investigations and his safety was at risk. United States v. De Los Santos, 810 F.2d 1326, 1332-33 (5th Cir.) (balancing protection of information against defendant's right to prepare defense), cert. denied, 484 U.S. 978 (1987). The safety and continuing benefit factors, coupled with the disclosure of Winchester's significant criminal past, made non-disclosure of Winchester's true name appropriate and disclosure unnecessary.
 
 
 14
 Finally, our independent review of the material submitted by the government for in camera review reveals no error in the trial court's disclosure orders. As the government points out, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," is not enough to show a Brady violation. United States v. Agurs, 427 U.S. 97, 109-10 (1976). The material Montoya points to (particularly the "government's submission of declarations pursuant to Judge Byrne's June 27, 1988, order," and the "government's in camera submission pursuant to court's August 20, 1988, order") contained nothing that should have been, but was not, disclosed.
 
 
 15
 B. Outrageous Governmental Conduct.
 
 
 16
 Montoya contends that the government's use of informant Winchester was "so shocking and outrageous" that it violated his due process rights. Whether the government's conduct is sufficiently outrageous to violate due process is a question of law reviewed de novo. United States v. Sotelo-Murillo, 887 F.2d 176, 182 (9th Cir.1989).
 
 
 17
 The Ninth Circuit, as Montoya admits, has been very reluctant to dismiss indictments on the basis of alleged outrageous government conduct. United States v. Carpenter, 961 F.2d 824, 829 (9th Cir.), cert. denied, 113 S.Ct. 332 (1992). Winchester's role was essentially limited to that of introducing a willing seller of narcotics to a willing purchaser. That is not outrageous government conduct. United States v. Prairie, 572 F.2d 1316, 1319 (9th Cir.1978) ("[I]t is clear that the use of paid informants and undercover police officers to ferret out drug dealers is not violative of due process principles.").
 
 
 18
 C. Judge as Advocate.
 
 
 19
 Montoya complains that the trial judge "sid[ed] with the government by aiding and protecting the govern[m]ent attorn[e]y" during witness examination and generally "injected [him]self into the entire proceedings continuously." We review the trial judge's conduct of the trial for abuse of discretion. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989).
 
 
 20
 A district court judge, of course, "is more than an umpire, and may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition." Id. Montoya is entitled to a new trial only if the trial judge's participation in the proceedings, as reflected by the record, indicates "actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." Id.
 
 
 21
 The trial judge's interjections here do not indicate such a bias, and thus were not an abuse of his discretion. Cf. Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 709 (9th Cir.1989) ("In a federal courtroom, a district judge has the undeniable right to examine witnesses and call the jury's attention to important evidence.").
 
 
 22
 D. Ineffective Assistance of Counsel.
 
 
 23
 Montoya asserts that his trial counsel, appointed three weeks prior to trial, was "so ineffective and ill prepared" that Montoya did not receive a fair trial. An ineffective assistance of counsel argument is more properly raised by collateral attack, not direct appeal. United States v. Necoechea, No. 92-10275, 1993 WL 38126 * 6 1993 U.S.App. LEXIS 2399, at * 20- * 21 (9th Cir. Feb. 18, 1993) (citing United States v. Robinson, 967 F.2d 287, 290 (9th Cir.1992)). Because the record is insufficiently developed to resolve Montoya's claim, we find that any such argument must be brought in a 28 U.S.C. § 2255 collateral attack on the conviction. See Robinson, 967 F.2d at 290-91.
 
 
 24
 E. Cross-examination Limitations.
 
 
 25
 Montoya claims that the district court improperly limited cross-examination of Winchester, and that those limitations violated his Sixth Amendment rights. We review a trial judge's decision to limit cross-examination for abuse of discretion. United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). Whether cross-examination restrictions are so severe as to be violative of the Sixth Amendment's confrontation clause is a legal question that we review de novo. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991).
 
 
 26
 Montoya asserts that there were areas of possible bias and interest of which the jury was never informed. The government responds that it is difficult to see how the inclusion of additional details of the confidential informant's prior offenses, or his original name, or the names of the other government targets, would lend to the composite picture drawn of the witness and his credibility.
 
 
 27
 The jury was apprised of Winchester's informant status, his past criminal record, and the benefits an informant might derive from the government for testifying and informing. The record shows that defense counsel extensively cross-examined Winchester. In short, the jury was equipped adequately to evaluate Winchester's bias and inherent unreliability. We find no abuse of discretion and no violation of the confrontation clause.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Pursuant to 21 U.S.C. § 841(b), possession of "5 kilograms or more" of cocaine subjects the possessor to "a term of imprisonment which may not be less than 10 years or more than life." Larger minimum penalties are possible in certain circumstances