PUBLISH

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

_____

No. 94-4341

_____

D.C. Docket No. 91-708-CR-JAG


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,


        versus


ARTHUR MASSEY,

                                        Defendant-Appellant.


_____
Appeal from the United States District Court
for the Southern District of Florida
_____


**(July 12, 1996)**


Before HATCHETT and BARKETT, Circuit Judges, and GODBOLD, Senior
Circuit Judge.


HATCHETT, Circuit Judge:


        In this "Operation Court Broom" case, we affirm the

appellant's convictions and sentences.

In the late l980s, federal and state law enforcement agencies set-up a sting operation called "Operation Court Broom" to investigate allegations of corruption in the Circuit Court of Dade County, Florida.  "Operation Court Broom" resulted in a 106-count superseding indictment against three judges and six lawyers for RICO conspiracy and related charges.

**FACTS**

On several occasions in or around l987, Arthur Massey, a lawyer licensed in Florida, sought Miami bail bondsman and private investigator Albert Tiseo's assistance in obtaining court appointments as a special assistant public defender (SAPD).[1]  In return for Tiseo's efforts, Massey promised to have Tiseo appointed as an investigator on the cases he received.  In late 1988, Massey told Tiseo that a couple of thousand dollars could "open some doors" with Circuit Judge Alfonso C. Sepe.  Two weeks after Massey's conversation with Tiseo, Tiseo met Sepe, gave him approximately $2,500 in cash, and requested that Sepe begin appointing Massey as SAPD.  Sepe accepted the money and began appointing Massey as SAPD.[2]  Approximately a month later, Sepe hosted a Christmas luncheon for his employees and coworkers at Art Brun's Executive Club (the Club).  Sepe charged the cost of the luncheon to Massey's account at the Club.  Sepe also began

---

[1] Circuit court judges appoint lawyers as SAPDs when the Public Defender's Office cannot represent indigent defendants because of a conflict of interest.  The appointing judge also determines  reasonable attorney's fees for SAPDs.

[2] Tiseo also received some appointments from Sepe on Massey's court-appointed cases.

2

charging his luncheon bills at Buccione's Restaurant (Buccione) to Massey. At that time, Sepe had lunch at Buccione's four to five times a week. At the conclusion of Sepe's meals, Buccione's employees would hold the guest checks for Massey, occasionally writing Sepe's name at the top of the guest check. Thereafter, Massey periodically would pay Sepe's billings with a personal check or credit card.

In January 1989, Tiseo approached Circuit Judge Roy T. Gelber to request SAPD appointments for Massey. Gelber told Tiseo that he did not feel obligated to appoint Massey as SAPD because Massey did not give him money during his judicial campaign. One week after this conversation, Sepe asked Gelber to appoint Massey as SAPD on some of his cases, assuring Gelber that he would settle Gelber's dispute with Massey. Gelber agreed and appointed Massey as SAPD to two cases. Shortly thereafter, Massey appeared at Gelber's chambers and gave him an envelope containing $1,000 in cash. After Massey's visit, Gelber told Sepe that he was reluctant to appoint Massey to any other cases because no one had advised him of the conditions of their arrangement. Sepe again assured Gelber that he would handle Gelber's concerns. Gelber appointed Massey to two more cases, but never received payment for those appointments. Later that year, Sepe hosted another Christmas luncheon at the Club and charged the cost of the luncheon to Massey. Massey paid neither the bill for this luncheon nor for the Christmas luncheon given a

3

year earlier at the Club. Massey, however, continued to pay Sepe's personal luncheon bills at Buccione.

In December of 1990, Raymond Takiff, a private lawyer cooperating with law enforcement, approached Gelber about "fixing" two narcotics cases assigned to Sepe. Gelber asked Sepe to fix the two cases and Sepe agreed. Gelber requested that Massey receive the bribe money on their behalf. Sepe stated that Massey "would be fine" for the job. Two weeks later, in a conversation between Gelber and Sepe, Sepe stated that he did not want to deal with Massey and that he was going to talk to David Goodhart, a lawyer, about handling the bribe money. Sepe stopped appointing Massey as SAPD.

Prior to Sepe's conflict with Massey, from November 1988 through January 1991 Massey paid approximately $1,700 of Sepe's luncheon bills at Buccione. During this same period of time, Massey received court appointments from Sepe resulting in approximately $91,400 in fees.

## PROCEDURAL HISTORY

On May 27, 1992, a grand jury in the Southern District of Florida returned a 106-count superseding indictment against Massey and seven codefendants.[3] Count 1 charged them with conspiring to violate the Racketeer Influence and Corrupt

---

[3] The grand jury also indicted Judge Harvey N. Shenberg, Judge Alfonso C. Sepe, Judge Phillip S. Davis, David Goodhart, William Castro, Arthur Luongo, Harry Boehme, and Nancy Lechtner. Judge Roy T. Gelber, an unindicted coconspirator, pleaded guilty to RICO conspiracy and testified for the government against Massey and the codefendants.

4

Organization Act (RICO), in violation of 18 U.S.C. § 1962(d); Count 2 charged Massey and four codefendants with violation of RICO provisions 18 U.S.C. §§ 1962(c) and 1963(a); Counts 5, 85, and 86 charged Massey with bribery in violation of 18 U.S.C. § 666(a)(2); and Counts 61 through 80 charged Massey with mail fraud in violation of 18 U.S.C. §§ 1341, 1346, and 2. The indictment also sought the forfeiture of $35,000 in Massey's possession.

The district court scheduled Massey and the codefendants' trial for August 31, 1992. On July 16, 1992, Massey filed a motion for relief from prejudicial misjoinder and continuance. In support of this motion, Massey filed an affidavit waiving his right to a speedy trial and his right to challenge the location of the trial. On May 13, 1993, the district court severed Massey's trial from the trial of the remaining codefendants and scheduled Massey's trial for September 7, 1993, in Fort Lauderdale, Florida. Prior to trial, Massey filed a motion to conduct the trial in Miami and a motion for continuance requesting thirty days to review exhibits filed in his codefendants' cases. The court denied the motions, but granted Massey a seven-day continuance.

On September 13, 1993, Massey's trial commenced. Massey moved for a judgment of acquittal at the close of the government's case and at the close of his case. The court denied both motions. On September 30, 1993, the jury convicted Massey of RICO, RICO conspiracy, one count of bribery, and twenty counts

5

of mail fraud.  After finding Massey guilty of these charges, the jury heard the evidence on the government's forfeiture claim and returned a verdict in the amount of $35,000.  Massey filed post-trial motions for judgment of acquittal and for new trial based on an allegation of newly discovered evidence.  The district court denied Massey's motions.  The district court sentenced Massey to concurrent terms of thirty months imprisonment and two years supervised release.

**CONTENTIONS**

Massey contends that insufficient evidence supports his convictions and that the district court abused its discretion in allowing the government to use summary charts,  admitting records of restaurant guest checks, and providing the redacted indictment to the jury.  Massey further contends that the district court committed plain error when it provided the jury with a tape recording of the jury instructions.  Finally, Massey contends that the district court erred in denying his motion for new trial without an evidentiary hearing based on a claim that the government suppressed evidence favorable to his defense.[4]  The government contends that all of Massey's claims lack merit and do not require reversal of his conviction.

**ISSUES**

---

[4] Massey raises two other contentions on appeal: (l) the government engaged in misconduct during closing arguments that violated his Sixth Amendment rights; and (2) the district court's denial of his motion to conduct the trial in Miami and his motion to continue the trial for thirty days constitutes reversible error.  We find that these claims lack merit and do not warrant discussion.

We discuss the following issues: (1) whether sufficient evidence supports Massey's convictions; (2) whether the government's use of summary charts substantially prejudiced Massey's case; (3) whether the district court abused its discretion in admitting restaurant guest checks at trial; (4) whether the district court properly provided a redacted indictment to the jury; and (5) whether the district court properly denied Massey's claim that the government suppressed favorable evidence without an evidentiary hearing.

## DISCUSSION

### A.    Sufficiency of the Evidence

Whether sufficient evidence supports a conviction is a question of law we review de novo.  United States v. Mieres-Borges, 919 F.2d 652, 656 (11th Cir. 1990), cert. denied, 499 U.S. 980 (1991).  In reviewing the sufficiency of the evidence presented at trial, we examine the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. United States v. Gilbert, 47 F.3d 1116, 1118 (11th Cir. 1995); United States v. Camargo-Vergara, 57 F.3d 993, 997 (11th Cir. 1995).  If a reasonable person could find that the evidence establishes guilt beyond a reasonable doubt, the jury's verdict must be upheld.  United States v. Jones, 933 F.2d 1541, 1546 (11th Cir. 1991).

Massey challenges the sufficiency of the evidence supporting his convictions on several grounds.  First, Massey contends that

7

insufficient evidence supports his bribery conviction because the government failed to present direct evidence that he agreed to purchase meals for Sepe in exchange for court appointments. Second, Massey contends that insufficient evidence supports the predicate acts supporting his RICO convictions, and therefore argues that his RICO conviction fails. Third, Massey contends that the alleged infirmities of the predicate acts supporting the substantive RICO conviction also necessitate the finding that insufficient evidence supports his RICO conspiracy conviction.[5]

In reviewing the sufficiency of the evidence supporting Massey's bribery conviction, we first note that Massey bases his challenge on the incorrect assumption that the government must produce direct evidence of a verbal or written agreement in order for this court to sustain the bribery conviction. "'[D]irect evidence of an agreement [, however,] is unnecessary: proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence.'" United States v. Carter, 721 F.2d 1514, 1532 (11th Cir. 1984) (quoting United States v. Elliot, 571 F.2d 880, 903 (5th Cir.), cert. denied, 439 U.S. 953 (1978)). To hold otherwise "would allow [defendants] to escape liability . . . with winks and nods, even when the evidence as a whole proves that there has been a meeting of the

---

[5] In support of his sufficiency of the evidence argument, Massey notes that a jury acquitted Sepe on counts on which this jury convicted. Because the acquittals of a defendant's alleged coconspirators in a trial before a different jury does not preclude a defendant's conviction for having conspired with them, we find that Sepe's acquittal is irrelevant. See United States v. Irvan, 787 F.2d 1506, 1512-13 (11th Cir. 1986).

minds to exchange official action for money." United States v. Carpenter, 961 F.2d 824, 827 (9th Cir.), cert. denied, 506 U.S. 919 (1992).

The jury convicted Massey of one count of bribery in violation of 18 U.S.C. § 666(a)(2) finding that Massey purchased Sepe's lunches at Buccione in exchange for court appointments. Section 666(a)(2) provides:

> Whoever . . . corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of . . . a state, . . . in connection with any business, transaction, or series of transactions of such . . . government involving anything of value of $5,000 or more . . . shall be fined under this title, imprisoned not more than ten years, or both.

18 U.S.C. § 666(a)(2). At trial, Tiseo testified that Massey told him that a couple of thousand dollars could "open some doors" with Sepe. Tiseo also testified that after Massey's statement he gave money to Sepe and asked Sepe to appoint Massey as an SAPD. Tiseo further testified that Sepe kept the money and subsequently began appointing Massey as SAPD. The owner of Buccione, Pietro Venezia, testified that Massey began paying Sepe's restaurant bills in November 1989 during the same period of time that Massey received appointments. Venezia further testified that Sepe knew that Massey was paying these bills. Venezia also testified that Massey ceased paying Sepe's bills in January 1991 during the same period Sepe discontinued appointing Massey to cases. Based on this evidence, we conclude that sufficient evidence supports the jury's finding that Massey

9

agreed to pay Sepe's lunch bills at Buccione in exchange for court appointments in violation of 18 U.S.C. § 666(a)(2).

Next, we address whether sufficient evidence supports Massey's RICO conviction. Count 2, the substantive RICO count, charged Massey with participating in the conduct of the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(c) and 1963(a).[6] The jury convicted Massey on Count 2 of the indictment finding that Massey corruptly utilized the Circuit Court of Dade County for profit. In convicting Massey, the jury specifically found that Massey committed two predicate acts of bribery in violation of section 838.016(1) of Florida Statutes: racketeering act 2 involving the payment of Sepe's bills at Buccione and racketeering act 5 involving the assignment of Sepe's Christmas lunch bills to Massey's account at the Club. Massey, on appeal, argues that insufficient evidence supports the jury's finding that he committed racketeering act 5 because the government presented no

---

[6] In order to establish violation of 18 U.S.C. §§ 1962(c) and 1963(a),

> the government must prove: (1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity.

United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir. 1995) (footnote omitted).

10

evidence that (1) Massey paid for Sepe's Christmas luncheon or (2) that the Club sought payment from Massey for these bills.[7]

To sustain Massey's substantive RICO conviction, the evidence presented at trial must show that Massey participated in the corruption of the Circuit Court of Dade County--a legitimate enterprise--through a pattern of racketeering activity. A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Section 838.016(1) only required the jury, in finding that Massey committed act 5, to conclude that Massey agreed to pay for Sepe's Christmas parties in exchange for court appointments, not that Massey actually paid these bills. Section 838.016(1) provides:

> It is unlawful for any person corruptly to give, offer, or promise to any public servant, . . . any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.

Fla. Stat. Ann. § 838.016(1) (West 1994). At trial, the government presented evidence that Massey's friend of twenty years owned the Club, that Massey frequently dined at the Club, that Sepe only dined at the Club on the two occasions he hosted the Christmas luncheon, and that on both occasions Sepe charged the luncheon to Massey's account at the Club. We conclude that

---

[7] Massey also contends that the $35,000 forfeiture judgment entered against him must be set aside arguing that insufficient evidence supports his RICO conviction. We reject this contention because we find that sufficient evidence supports Massey's RICO conviction.

this evidence sufficiently supports the jury's finding that Massey agreed to pay for Sepe's Christmas luncheons at the Club in exchange for court appointments.

Similarly, we reject Massey's argument that insufficient evidence supports his RICO conspiracy conviction (Count 1) because the alleged infirmities of predicate act 5 do not warrant the reversal of Massey's RICO conspiracy conviction.[8] It is well settled in this circuit that the government can prove an agreement to participate in a RICO conspiracy in either of two ways: (1) showing an agreement on the overall objective; or (2) showing that a defendant agreed personally to commit two predicate acts thereby agreeing to participate in a "single objective." United States v. Church, 955 F.2d 688, 694 (11th Cir.), cert. denied, 506 U.S. 881 (1992); Starrett, 55 F.3d at 1544. Even assuming that insufficient evidence supports Massey's substantive RICO conviction, the evidence in this case supports the finding that Massey agreed to the overall objective of the enterprise--i.e., to corruptly utilize the circuit court system for profit. "The government can prove an agreement on an overall objective 'by circumstantial evidence showing that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise through a pattern of

---

[8] The government contends that Count 1, the RICO conspiracy count, did not incorporate the racketeering acts detailed in Count 2, the substantive RICO count. It therefore argues that sufficient evidence supports Massey's RICO conspiracy conviction even assuming that his substantive RICO conviction fails. We agree for the reasons stated above.

12

racketeering.'"  <u>Starrett</u>, 55 F.3d at 1544 (quoting <u>United States v. Gonzalez</u>, 921 F.2d 1530, 1540 (11th Cir.), <u>cert. denied</u>, 502 U.S. 860 (1991)).  We find that the evidence in this case also supports the finding that Massey knew that others were also conspiring to corruptly use the circuit court system for profit.  Accordingly, we hold that sufficient evidence supports Massey's conviction for RICO, RICO conspiracy, bribery, and mail fraud.

## B.  Evidentiary Matters at Trial

In examining the district court's evidentiary rulings, we review for abuse of discretion.  <u>United States v. Norton</u>, 867 F.2d l354, l362 (llth Cir.), <u>cert. denied</u>, 491 U.S. 907 (1989).  Where a defendant fails to object at trial to a ruling complained of on appeal, the district court's ruling only warrants reversal upon a showing of plain error.  Fed. R. Crim. P. 52(b).  An error constitutes "[p]lain error, when examined in the context of the entire case, [it] is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of judicial proceedings."  <u>United States v. Walther</u>, 867 F.2d l334, l343-44 (llth Cir.), <u>cert. denied</u>, 493 U.S. 848 (1989).

### 1.  Use of Summary Chart

Without objection from defense counsel, the government used summary charts as demonstrative evidence during the trial.  On appeal, Massey contends that the government's use of a summary chart purporting to show the relationship between Massey's payment of Sepe's luncheon bills and Sepe's appointments of Massey as SAPD substantially prejudiced his case because the

13

chart alleged that he paid $10,000 rather than the $1,700 the government proved at trial.[9]  We find that Massey has failed to show actual prejudice.

Rule 1006 of the Federal Rules of Evidence provides that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  Fed. R. Evid. 1006.  In this case, the illustrative charts complained of merely summarize the evidence presented at trial.  The government introduced numerous guest checks and receipts as well as testimonial evidence that Massey made approximately $10,000 worth of payments for Sepe's meals.  Massey's counsel conducted voir dire on each of the charts prior to the court's ruling on its admissibility.  Defense counsel also conducted a thorough cross-examination of the witnesses concerning the disputed matters.  In fact, Massey submitted his own summary charts during his defense.  Moreover, the district court instructed the jury to disregard any charts or summaries which "do not correctly reflect facts or figures shown by the evidence in the case."  In light of

---

[9] For sentencing purposes, the government must establish the amount of Massey's payments by a preponderance of the evidence. United States v. Taffe, 36 F.3d 1047, 1050 (11th Cir. 1994).  The district court at Massey's sentencing hearing determined that the government only proved that Massey paid $1,700 of the $10,000 the government alleged.  This finding, however, does not transform the district court's decision to allow the use of the government's illustrative charts to an abuse of discretion because rule 1006 does not require the fact finder to accept the information present on the summary charts as true.  See Fed. R. Evid. 1006.

14

these circumstances, we find that the district court did not abuse its discretion in admitting the summary charts.

## 2. Admission of Restaurant Receipts

Next, Massey contends that the district court abused its discretion in admitting Buccione Restaurant guest checks. The government presented evidence at trial that when Sepe had lunch at Buccione the employees held the guest check for Massey, occasionally writing Sepe's name at the top of the guest checks before setting the guest checks aside. At trial, defense counsel objected to the admission of Buccione's guest checks containing Sepe's name arguing that the records did not constitute records kept in the regular course of business. The district court overruled defense counsel's objections finding that the persons who wrote Sepe's name on the challenged documents did so in the regular course of business.

"The business-records exception . . . provides that a record, 'if kept in the course of a regularly conducted business activity,' and if 'it was the practice of the business activity to make the . . . record,' is admissible unless circumstances 'indicate lack of trustworthiness.'" United States v. Metallo, 908 F.2d 795, 799 (11th Cir. 1990) (quoting Fed. R. Evid. 803(6)), cert. denied, 503 U.S. 940 (1992). Prior to admitting the restaurant guest checks and receipts into evidence, the district court permitted defense counsel to voir dire the witness as to each document. Venezia, the owner of Buccione, identified his handwriting as well as the handwriting of his employees on

15

the restaurant guest checks. Three Buccione employees also testified as to their handwriting on the guest checks and knowledge of the facts contained in the document. This testimony supports the district court's finding that Buccione employees wrote Sepe's name on the restaurant guest checks in the regular course of business. We, therefore, hold that the district court did not abuse its discretion in admitting the guest checks as admissible hearsay under Federal Rule of Evidence 803(6).

### C. Submissions to the jury

#### l. Redacted Indictment

In this case, the district court provided a redacted indictment to the jury containing only the counts the grand jury charged against Massey. The RICO conspiracy count of the indictment, however, included racketeering acts of both Massey and the codefendants. Massey contends that the district court erred in submitting this redacted indictment, arguing that the inclusion of codefendants' acts of case-fixing unfairly prejudiced his case. We review the district court's submission of the indictment for abuse of discretion. See United States v. Polowichak, 783 F.2d 4l0, 4l3 (4th Cir. l986) (finding no error where district court submitted indictment to a jury and gave cautionary instruction).

Our review of the record persuades us that the inclusion of codefendants' racketeering acts in the indictment merely aided the jury in "explaining the context, motive and set-up" of the RICO conspiracy. United States v. Williford, 764 F.2d l493, 1499

16

(11th Cir. 1985). Count 1 of the indictment charged Massey and the codefendants with conspiring to corruptly utilize the circuit court for profit. Each of the racketeering acts in the indictment clearly identified which defendants committed the alleged acts. The district court, prior to providing the indictment, instructed the jury that the indictment did not constitute evidence. Massey, moreover, has not shown that the jury used the codefendants' racketeering acts for an impermissible purpose. Even assuming prejudice, sufficient evidence existed to support Massey's conviction independent of any impermissible inferences the jury might have obtained from the codefendants' racketeering acts. Because the district court provided the indictment to aid the jury in following the court's instructions, and properly instructed the jury that the indictment did not constitute evidence, we conclude that the district court did not abuse its discretion in providing the redacted indictment.

### 2. Tape Recording of Jury Instructions

The "[s]ubmission of written instructions is within the sound discretion of the [district] court." United States v. Holman, 680 F.2d 1340, 1354 (11th Cir. 1982).

Massey contends that the district court erred in providing the jury with only a tape recording of the jury instructions.[10]

---

[10] The jury requested twelve copies of written jury instructions on the first day of deliberations. The district court, after noting that the court reporter had not transcribed the jury charge, asked the parties if they objected to sending the tape-recorded instructions to the jury. Neither the

17

Massey failed to timely object to the form of the jury instructions; therefore, we review for plain error. Specifically, Massey argues that the district court's actions require reversal because the tape recording permitted the jury to improperly focus on jury instructions relating to the RICO and mail fraud counts without considering all the instructions. We reject Massey's argument for three reasons. First, the tape recording contained the entire jury charge. Second, the district court instructed the jury to follow the instructions "as a whole" and not to disregard any of the instructions. Third, no evidence exists to suggest that the tape recording impaired the jury's ability to follow the district court's instructions. Thus, we conclude that Massey has failed to show that the tape recording was so cumbersome that the taped instructions seriously affected the fairness of his trial and the integrity of the jury's verdict. Accordingly, we find no reversible error.

### D. **Brady** Evidentiary Hearing

Finally, Massey contends that the district court erred in denying without an evidentiary hearing his motion for new trial

---

government nor Massey objected to the submission of the tape. The court subsequently sent the jury the tape along with the message that no written instructions were available at that time. At the end of the day, Massey's counsel requested that the court also provide the jury with written instructions the following morning. The court agreed. The jury, however, reached a verdict that evening before the court reporter transcribed the instructions. The next morning, the court informed the parties that the jury had reached a verdict. At that time, Massey did not object to the jury rendering a verdict without the benefit of written instructions.

based on an allegation that the government failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (l963). We review the district court's denial of an evidentiary hearing for abuse of discretion. United States v. Slocum, 708 F.2d 587, 600 (llth Cir. l983).

To establish a Brady violation, a defendant must show that "(l) the prosecution suppressed evidence, (2) the evidence suppressed was favorable to the defense or exculpatory, and (3) the evidence suppressed was material." Starrett, 55 F.3d at l555. "'[F]avorable evidence is material and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Starrett, 55 F.3d at l555 (quoting Kyles v. Whitley, ll5 S. Ct. l555, l565 (l995)). Massey alleges that the government failed to disclose the following testimony before the grand jury that (l) Becky Ramos testified that Tiseo told her that Massey was not involved in the circuit court corruption; and (2) Frank DiRocco testified that Tiseo told him that he was a "bag man" and that DiRocco saw Tiseo talking privately with Sepe and Gelber. We find that Massey's allegations lack merit; therefore, they do not warrant a Brady evidentiary hearing. In fact, none of the affidavits Massey filed in support of his motion for an evidentiary hearing contained exculpatory

19

evidence.[11]  Similarly, Massey's allegations that the government

suppressed favorable impeachment evidence also lacks merit;

therefore, we find it unnecessary to address these arguments.

Accordingly, we hold that the district court did not abuse its

discretion in denying Massey's <u>Brady</u> claim without an evidentiary

hearing.

## CONCLUSION

For the foregoing reasons we affirm the appellant's

convictions and sentences.

## AFFIRMED

---

[11] Contrary to Massey's assertions, Ramos did not testify that Tiseo told her that Massey had no involvement in the circuit court corruption.  Rather, in her affidavit supporting Massey's motion for new trial, she states:  "I had no knowledge that Arthur Massey had anything to do with the corruption of the Eleventh Judicial Circuit."