**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph E. WILSON, Defendant–Appellant.**

**No. 00–30314.**

**D.C. No.  CR–99–00096–A–JMF.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2001.

Decided April 3, 2002.

---

Before SCHROEDER, T.G. NELSON, and SILVERMAN, Circuit Judges.

## MEMORANDUM *

Joseph Wilson (Wilson) appeals his convictions for aiding and abetting wire fraud, filing false tax returns and money laundering. We have jurisdiction pursuant to 28

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

U.S.C. § 1291, and we affirm in part, reverse in part, and remand for re-sentencing.

## I. AIDING AND ABETTING

■ Wilson first argues that there was insufficient evidence to support his wire fraud aiding and abetting convictions. We disagree and affirm the convictions.

We review de novo the question of whether the evidence was sufficient to support a conviction.[1] We view the evidence in the light most favorable to the Government, and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] Under this standard, there was ample evidence from which the jury could have found beyond a reasonable doubt that Wilson had the specific intent to facilitate his wife's crime, the requisite intent to commit wire fraud himself, and that he assisted or participated in the wire fraud.[3]

The record shows that, during the relevant time period, the Wilson family rapidly went from having difficulty meeting the costs of basic necessities to having tens of thousands of dollars to spend on luxury purchases and gambling junkets. Wilson also knew that Sara had begun carrying large amounts of cash in her purse, that she kept blank Carrs money orders in the safe, and paid bills with them. Wilson himself used partially blank Carrs money orders on several occasions. Finally, Wilson appeared evasive when an FBI agent questioned him regarding his finances.

The jury could easily have concluded from the evidence that Wilson, an IRS Revenue Officer with several superior performance commendations, must have known that the family's legal income alone could not support their lifestyle, and that he had to know that the money came from Sara's embezzlement activities. Thus, there was sufficient evidence to support a rational fact finder in concluding that Wilson had actual subjective knowledge of Sara's embezzling and that all the elements of Wilson's aiding and abetting charges were met beyond a reasonable doubt. The fact that the evidence was almost all circumstantial is irrelevant: " '[B]oth direct and circumstantial evidence can be used to establish knowledge and [both] are given the same weight.' "[4] We therefore hold that there was sufficient evidence to support Wilson's wire fraud aiding and abetting convictions.

## II. FILING FALSE TAX RETURNS

■ Wilson also argues that there was insufficient evidence to support his convictions for filing false tax returns. Given that the evidence supports a jury finding that Wilson knew of Sara's embezzling and wire fraud and that he aided and abetted the wire fraud, the evidence is also sufficient to support a rational jury in concluding beyond a reasonable doubt that Wilson knew the tax returns were false. We therefore affirm Wilson's convictions for filing false tax returns.

---

1. *United States v. Valencia–Amezcua,* 278 F.3d 901, 910 (9th Cir.2002).

2. *Id.*

3. Wilson does not dispute that there was sufficient evidence to support the fourth element: that his wife actually committed the wire fraud.

4. *United States v. Sayakhom,* 186 F.3d 928, 943 n. 8 *as amended by* 197 F.3d 959 (9th Cir.1999) (quoting *United States v. Heaps,* 39 F.3d 479, 484 (4th Cir.1994)), *cert. denied,* 528 U S. 1179, 120 S.Ct. 1216, 145 L.Ed.2d 1117 (2000); *see also United States v. Ciccone,* 219 F.3d 1078, 1084 (9th Cir.2000) ("The government can establish knowledge of a fraudulent purpose by circumstantial evidence.").

## III. MONEY LAUNDERING

### A. Counts 18–27: "Promotional" Money Laundering

■ As previously discussed, there was sufficient evidence from which the jury could have rationally concluded that Wilson not only had actual subjective knowledge of Sara's embezzling, but also aided and abetted Sara's wire fraud. Thus, Wilson's only remaining argument regarding his "promotional" money laundering convictions is that there was insufficient evidence that he "inten[ded] to promote" the wire fraud.[5] We disagree with this contention.

■ In this circuit, " '[p]lowing back' of the gains into the [illegal] enterprise" need not be shown in order to obtain a promotional money laundering conviction pursuant to 18 U.S.C. § 1956(a)(1)(A)(i).[6] Under *United States v. Montoya*[7] and *United States v. Manarite*,[8] all that need be shown to establish that the defendant acted with "intent to promote the carrying on of [the] specified illegal activity"[9] is that the transaction in which the defendant engaged was necessary in order for the defendant to realize the benefit of the underlying illegal activity.[10] During his gambling trips, Wilson could not have realized the benefit of Sara's wiring of the embezzled funds unless he cashed the wire transfers. It is undisputed that Wilson cashed the transfers, and as previously discussed, the evidence supports a finding that Wilson knew the transfers were embezzled funds. Accordingly, there was sufficient evidence from which a rational jury could have concluded that Wilson intended to promote the wire fraud.[11]

### B. Counts 28–42: "Concealment" Money Laundering

■ Wilson argues that there is insufficient evidence to support his convictions for "concealment" money laundering. We agree and reverse Wilson's convictions under Counts 28 through 42.

The Government had to prove that the wire transfer payments to Wilson's hotel marker accounts were "designed in whole or in part ... to conceal or disguise the nature, the location, the source, the ownership, or the control" of the wire transfers.[12]

---

**5.** 18 U.S.C. § 1956(a)(1)(A)(i). A person engages in "promotional" money laundering when the person knows

> that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [and] conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... with the intent to promote the carrying on of specified unlawful activity[.]

*Id.*

**6.** *United States v. Manarite*, 44 F.3d 1407, 1416 (9th Cir.1995).

**7.** 945 F.2d 1068 (9th Cir.1991), *abrogated on other grounds by McCormick v. United States*, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), *as recognized by United States v. Carpenter*, 961 F.2d 824, 826 (9th Cir.1992).

**8.** 44 F.3d 1407 (9th Cir.1995).

**9.** 18 U.S.C. § 1956(a)(1)(A)(i).

**10.** *See Montoya*, 945 F.2d at 1076 (concluding that depositing a bribe check constituted promotional money laundering because "Montoya could not have made use of the funds without depositing the check"); *Manarite*, 44 F.3d at 1416 (concluding that cashing in chips from a chip-skimming scheme constituted promotional money laundering because "[t]he chip-skimming scheme could not benefit its participants unless the chips were cashed").

**11.** *See Manarite*, 44 F.3d at 1416 ("A rational jury could conclude that the Manarites cashed the chips with the intent to promote the chip-skimming scheme.").

**12.** 18 U.S.C. § 1956(a)(1)(B)(i).

The Government fails to cite any record evidence on this element. Our examination of the trial record reveals that the only reference to the marker accounts was in Sara's testimony, when she simply affirmed that a hotel marker account—an entirely legitimate device, similar to a line of credit—was established and maintained in Wilson's name. Nothing in Sara's testimony even remotely suggested that the marker account was used to conceal or disguise the nature, location, source, ownership, or control of the embezzled money. The fact that wire transfers to the marker account were made in Wilson's name would actually seem to suggest a more direct connection between Wilson and the stolen money than had existed under Wilson's previous practice of cashing Western Union wire transfers.

This does not mean that the Government's theories as to how the marker account *could* have been used to conceal and disguise are inherently implausible; but the Government did not introduce evidence to support its theories. Thus, even viewing the record in the light most favorable to the Government, the complete lack of any evidence tending to show that the marker account was designed to conceal or disguise the nature, location, source, ownership, or control of the stolen money means that no rational jury could have found beyond a reasonable doubt that Wilson was guilty of concealment money laundering.[13]   Accordingly, we reverse Wilson's concealment money laundering

convictions under Counts 28 through 42 and remand for re-sentencing.

AFFIRMED in part, REVERSED in part, and REMANDED for re-sentencing.

---

**13.**  *See United States v. Lo,* 231 F.3d 471, 475–77 (9th Cir.2000) (reversing mail fraud conviction because lack of any record evidence that a Truth In Lending document had been mailed, or even existed, meant that the Government's evidence of mail fraud was "so scant as to be insufficient to support the conviction."); *United States v. Dacus,* 634 F.2d 441, 444–45 (9th Cir.1980) (reversing convictions for selling unregistered subdivision lots

in violation of the Interstate Lands Act because "[a]lthough there may initially have been more than 50 lots in these subdivisions . . . the record fails to establish the number of lots in which the appellants ever had ownership or brokerage rights" (footnote omitted)).

