[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10579
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-00086-RWS-ECS-24


UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

versus

ELIO MARROQUIN-LOPEZ,
a.k.a. El Perico,

                                                              Defendant-Appellant.


_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(December 16, 2015)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Elio Marroquin-Lopez appeals his conviction and 86-month sentence, imposed above his sentencing guidelines range, after he was convicted for violating the conspiracy provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d).  After careful consideration of the briefs and the record, and for the reasons below, we affirm.

I.

Mr. Marroquin-Lopez was one of 26 defendants indicted by a federal grand jury for conduct related to his involvement in a street gang known as La Mara Salvatrucha-13 or "MS-13."  According to the indictment, MS-13 is one of the largest street gangs in the United States, with about 10,000 members.  The indictment alleged that members of MS-13 commit various criminal acts, including murder, robbery, illegal possession of firearms, and assault.  In many instances, MS-13 members commit these acts in order to maintain or increase their position in the gang.  Along with his co-defendants, Mr. Marroquin-Lopez was indicted in Count 1 based on his alleged participation in a conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d).

The indictment also named Mr. Marroquin-Lopez in four counts arising out of two similar incidents, one on December 15, 2008, and another on March 13, 2009.  According to the indictment, in each incident Mr. Marroquin-Lopez participated in an attempted murder for the purpose of maintaining and increasing

2

his position within MS-13.  With respect to the first murder attempt in 2008, he was charged with aiding and abetting a violent crime in aid of racketeering ("VICAR"), in violation of 18 U.S.C. §§ 1959(a)(5) and 2 (Count 26), and aiding and abetting the use and carrying of a firearm during and in relation to this first attempted murder in violation of 18 U.S.C. §§ 924(c) and 2 (Count 27).  With respect to the second murder attempt in 2009, he was charged with VICAR attempted murder (Count 28) and personally using and carrying a firearm during this second VICAR attempted murder (Count 29).

Before trial, Mr. Marroquin-Lopez offered to stipulate that MS-13 was RICO enterprise, as defined by 18 U.S.C. § 1961(4).[1]  He thus argued, in a motion in limine, that this stipulation rendered all enterprise evidence irrelevant, particularly evidence of RICO enterprise activities committed prior to 2008, the year he became involved in MS-13.  He also argued that even if the enterprise evidence were relevant, the prejudice of the evidence substantially outweighed its probative value in the light of his offer to stipulate.  The government declined Mr. Marroquin-Lopez's offer to stipulate and opposed his motion in limine.

The district court denied the motion in limine and admitted evidence of criminal conduct occurring prior to the time that Mr. Marroquin-Lopez allegedly entered into the conspiracy for the limited purpose of determining whether MS-13

---

[1] Mr. Marroquin-Lopez also offered to stipulate that the activities of MS-13 involved interstate and international commerce.

constituted a RICO enterprise.  The evidence included testimony of MS-13 gang members Kenedis Bonilla, Jose Delgado, and Gustavo Lopez-Caal.

At trial, Mr. Bonilla testified first.  He provided background information about MS-13.  According to Mr. Bonilla, to join the gang, a person had to be "jumped in," meaning he would succumb to a beating by other MS-13 members and fight these members as a way to prepare for fights against rival gang members. Doc. 1345 at 17-19, 27.[2]  And Mr. Bonilla testified that, generally, the only way out of the gang was death, although he provided examples, including his own, of how members could leave the gang by committing certain crimes.  Mr. Bonilla provided other details of MS-13 life including how the gang collects money to purchase weapons or otherwise assist in gang activity, how gang members could recognize one another with tattoos or the color of their clothing, and how he, as a clique leader, would punish members.

Mr. Bonilla also testified about specific crimes that MS-13 gang members other than Mr. Marroquin-Lopez committed.  For example, Mr. Bonilla testified that, in December 2006, he helped one gang member commit a drive-by shooting in which someone had been killed.  He provided details of four additional shootings against rival gang members and two robberies and testified that he participated in at least four robberies involving the use of heavy objects and guns.

---

[2] "Doc" refers to the docket entry in the district court record in this case.

4

He explained that he was granted permission to leave MS-13 in 2007 after he participated in another drive-by shooting.  On cross-examination, Mr. Bonilla confirmed that Mr. Marroquin-Lopez was not involved in any of these crimes.

Mr. Delgado's testimony confirmed much of Mr. Bonilla's general testimony, including gang admittance, gang color recognition, and general gang activity.  Mr. Delgado also explained the clique system, testifying that there were several MS-13 cliques throughout the Atlanta area, each with its own leader and "second leader."  Doc. 1345 at 140-41.  According to Mr. Delgado, the "second leader" helped the first leader "make big decisions" and assisted in imposing "violations," punishments for violating gang rules.  *Id.* at 137, 141.  "If the first leader, he gets arrested," Mr. Delgado testified, "that's when the second leader takes control of the gang.  So he's basically his right hand."  *Id.*  Finally, like Mr. Bonilla, Mr. Delgado provided testimony of specific crimes that did not involve Mr. Marroquin-Lopez including a number of murders and attempted murders, as well as the 2006 drive-by shooting Mr. Bonilla described.

Mr. Lopez-Caal corroborated Mr. Bonilla's and Mr. Delgado's general testimony, confirming, for example, how members join or leave the gang, how dues were collected and used, and how members identified each other.  Mr. Lopez-Caal also testified regarding specific crimes MS-13 members had committed.

At the conclusion of each of these witnesses' testimony regarding the alleged RICO enterprise, the district court instructed the jury on the limited purpose for which it could rely on this evidence.  Following Mr. Bonilla's testimony, for example, the district court instructed the jury as follows:

> You've heard testimony of acts of members of MS-13 other than the defendant on trial, Elio Marroquin-Lopez, that may be similar to those charged in the indictment but were committed prior to the time that the government alleges that Mr. Marroquin entered into the conspiracy and events that did not involve Mr. Marroquin.
>
> You may consider this evidence only for a limited purpose. You may consider this evidence only for the purpose of determining whether MS-13 constituted an enterprise engaging in racketeering activity as alleged in the indictment.

Doc. 1345 at 116-117**.**  The district court provided similar instructions following closing arguments.

The government also presented evidence about Mr. Marroquin-Lopez's general involvement with MS-13.  The evidence included testimony that Mr. Marroquin-Lopez was known as Perico and was a member of the Peewees clique of MS-13.  Mr. Lopez-Caal testified that Mr. Marroquin-Lopez was the second leader of the clique, and that he collected and kept track of money received at clique meetings.  Several witnesses testified that Mr. Marroquin-Lopez gave cocaine to other MS-13 members to sell and took a portion of the proceeds of these sales.  In contrast, Mr. Delgado did not identify Mr. Marroquin-Lopez as a leader and testified that he was not the leader of the Pinos clique.  One witness testified

6

that Mr. Marroquin-Lopez had committed three robberies, and another testified that he was involved in a fight with a rival gang in which he gave another MS-13 member a gun to shoot a rival gang member.

The evidence also included details of the 2008 alleged attempted murder, the basis for Counts 26 and 27 of the indictment. A City of Chamblee Police Department detective testified that he was dispatched to an apartment to investigate gun shots on December 15, 2008. At the apartment, he observed three bullet holes. He then interviewed a witness, Ramon Perez. Mr. Perez testified that he saw, and reported to police, two armed Hispanic males shooting at one of the apartment's windows. Mr. Perez gave the police a license plate number of the car he observed fleeing after the shooting.

As evidence of the 2009 alleged attempted murder, the basis for Counts 28 and 29, the government presented the testimony of the alleged victims, rival gang member Marcos Morales and Mr. Morales's uncle, Gerson Morales. They testified that on March 13, 2009, Mr. Marroquin-Lopez confronted them and threatened Gerson Morales with a pistol pointed at his stomach. According to the Moraleses, Mr. Marroquin-Lopez ended the altercation with a gunshot pointed towards the ground "a few centimeters away [from Marcos Morales's] body." Doc. 1347 at 101.

7

Mr. Lopez-Caal testified that Mr. Marroquin-Lopez told him about his involvement in both the 2008 and 2009 shootings.  As to the 2009 shooting, according to Mr. Lopez-Caal, Mr. Marroquin Lopez told him that he and Marcos Morales had a physical altercation ending with a gunshot.  Contrary to the Moraleses' testimony, however, Mr. Lopez-Caal maintained that Mr. Marroquin-Lopez fired the shot from the backseat of a car, through the window.

After the government rested its case, Mr. Marroquin-Lopez moved for judgment of acquittal on all five counts.  The district court granted his motion as to Counts 28 and 29 based on the alleged attempted VICAR murder in December 2009, and otherwise denied the motion.  Mr. Marroquin-Lopez then put on three witnesses who testified briefly before he rested his case.

At the charge conference, the government offered to submit to the jury a version of the indictment on which everything was redacted except the remaining offenses charged against Mr. Marroquin-Lopez (Counts 1, 26 and 27).  The district court also redacted several paragraphs in the "overt acts" section of Count 1 (RICO conspiracy) for which no evidence was presented at trial.  What remained of Count 1 was a background section (paragraphs 1 through 9); two lengthy paragraphs generally detailing the racketeering conspiracy (paragraphs 10 and 11); two paragraphs defining the enterprise and its purpose (paragraphs 12 and 13); a lengthy paragraph detailing the manner and means of the enterprise (paragraph 14);

8

and several paragraphs identifying overt acts allegedly committed by various co-defendants, each named specifically. Within this overt acts section was a paragraph alleging that Mr. Marroquin-Lopez shot at a rival gang member during the March 2009 shooting (paragraph 30).

Mr. Marroquin-Lopez urged the district court to redact the background section (paragraph 1 through 9), the paragraph detailing the manner and means of the enterprise (paragraph 14), and the March 2009 overt act (paragraph 30). He argued that these paragraphs were prejudicial because, for example, some of the allegations were unsupported by the evidence and the offending paragraphs generally amounted to nothing more than the government's theory of the case.

The district court granted in part and denied in part Mr. Marroquin-Lopez's request, redacting only paragraphs 3 and 4, which alleged information about MS-13's origin, history, and size, because no evidence had been introduced to support those allegations. The district court submitted the indictment to the jury without additional redactions, but instructed the jury that the indictment was not evidence of guilt.

Following deliberations, the jury entered a verdict of guilty as to Count 1 and not guilty as to Counts 26 and 27.

The probation officer then prepared a presentence investigation report ("PSI"). According to the PSI, confidential informant Lopez-Caal provided grand

jury testimony indicating that Mr. Marroquin-Lopez was second in command of the combined Peewees Locotes Salvatrucha and New Krazy Boys Locotes Savatrucha gangs.  Because this evidence supported a finding that Mr. Marroquin-Lopez was a leader in the offense, the PSI added a two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c).  With this enhancement, his total offense level was 21.  With his prior criminal convictions enhanced under U.S.S.G. § 4A1.1(d) because of his probation status during the commission of the offense, Mr. Marroquin-Lopez faced a criminal history category of III and a resulting guidelines range of 46 to 57 months' imprisonment.

Mr. Marroquin-Lopez objected to the aggravated role enhancement.  He argued that other than Mr. Lopez-Caal, no witness testified that he was a leader.  And, he argued, Mr. Lopez-Caal's testimony was incredible.  In particular, Mr. Marroquin-Lopez asserted that Mr. Lopez-Caal had falsely pinned him at the scene of the first alleged attempted murder in 2008 and falsely testified that in the 2009 murder attempt, he shot towards Marcos Morales, when Morales himself testified that Mr. Marroquin-Lopez shot towards the ground.

The district court overruled Mr. Marroquin-Lopez's objection.  The court recognized some credibility issues with Mr. Lopez-Caal's testimony generally but found credible his specific testimony about Mr. Marroquin-Lopez's leadership role.  The district court also recalled evidence that Mr. Marroquin-Lopez was seen

collecting money at meetings.  Thus, the district court applied the aggravating role enhancement.

The district court ultimately varied upwards from the guidelines range, citing the 18 U.S.C. § 3553(a) factors.  The court specifically noted the evidence that "[i]n a public park, [Mr. Marroquin-Lopez] jumped out of his truck and ran across the parking lot with a gun and stuck it to a man, threatening to kill him."  Doc. 1351 at 47.  The court surmised that the victim "was in mortal fear" and that the incident most certainly disturbed the peace in the community.  *Id.*  For these reasons, the district court characterized this crime as "heinous."  *Id.*  And the court recognized that this incident was part of an ongoing pattern of MS-13 violence, one that "our society takes very seriously."  *Id.* at 48.  For these and other reasons, the court sentenced Mr. Marroquin-Lopez to 86 months' imprisonment.

Mr. Marroquin-Lopez timely appealed.

## II.

Mr. Marroquin-Lopez raises three arguments on appeal.  First, he argues that the district court abused its discretion in denying his motion in limine to exclude evidence of uncharged violent gang activity, despite his offer to stipulate that the gang was an enterprise as defined by 18 U.S.C. § 1961(4).  Second, Mr. Marroquin-Lopez argues that the district court abused its discretion in denying in part his motion to redact certain information from the indictment prior to its

11

submission to the jury.  And third, Mr. Marroquin-Lopez argues that the district court erred in applying a two-level aggravating role adjustment, pursuant to U.S.S.G. § 3B1.1(c).  After careful review, we affirm.

### A.

Mr. Marroquin-Lopez argues that the district court erred in denying his motion in limine and admitting evidence of uncharged violent gang activity, including murders, despite his agreement to stipulate that MS-13 was a RICO enterprise as that term is defined by 18 U.S.C. § 1961(4).[3]  We generally review a district court's evidentiary rulings for abuse of discretion and "will reverse only if the resulting error affected the defendant's substantial rights."  *United States v. Tinoco*, 304 F.3d 1088, 1119 (11th Cir. 2002) (internal quotation marks omitted).

Mr. Marroquin-Lopez asserts that his offer to stipulate rendered irrelevant the evidence of murders, attempted murders, and violent assaults that took place before he joined the gang.  We disagree.  As a general rule, a party is not required to accept a stipulation and can insist on proving the fact or element of an offense.

---

[3] An enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  The existence of a RICO enterprise is one element of a RICO conspiracy. *See United States v. Browne*, 505 F.3d 1229, 1257 (11th Cir. 2007).  The government must also prove that the enterprise affected interstate commerce. *Id.* As noted above, Mr. Marroquin-Lopez also offered to stipulate that the enterprise affected interstate commerce.

*Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958).[4]  "A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it."  *Old Chief v. United States*, 519 U.S. 172, 187 (1997).  This general rule, however, "is qualified by Rule 403 of the Federal Rules of Evidence."  *United States v. O'Shea*, 724 F.2d 1514, 1516 (11th Cir. 1984); *accord Old Chief*, 519 U.S. at 190 (holding that this general rule has "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him").  Thus, the question we must ask is not whether the enterprise evidence remained relevant after Mr. Marroquin-Lopez's offer to stipulate, but whether admitting such evidence violated Rule 403.

Under Rule 403, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  The decision whether to exclude evidence under Rule 403 "is committed to the sound discretion of the trial court, tempered by the particular facts presented."  *O'Shea*, 724 F.2d at 1516 (internal quotation marks omitted).  A

---

[4] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding on this Court.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

party's offer to stipulate is only one factor that the trial court should consider in making a determination under Rule 403.  *Id.*

The district court did not abuse its discretion when it admitted RICO enterprise evidence, notwithstanding Mr. Marroquin-Lopez's offer to stipulate. The admission of this evidence did not pose a danger of undue prejudice that outweighed its probative value.  The enterprise evidence was highly probative because it showed the type of crimes the MS-13 RICO enterprise was engaged in and gave relevant context for the jury to understand how the enterprise functioned. A stipulation would "rob th[is] evidence of much of its fair and legitimate weight." *Parr*, 255 F.2d at 88.  Moreover, the district court instructed the jury four times to rely on this evidence only in deciding whether MS-13 constituted an enterprise engaging in racketeering activity as alleged in the indictment.  And we generally presume the jury follows a district court's clear instructions.  *See United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996).  Under these circumstances, we cannot say that the district court abused its discretion when it denied Mr. Marroquin-Lopez's motion in limine.

### B.

The district court redacted all paragraphs in the indictment except those in Counts 1, 26 and 27, and several paragraphs within Count 1 for which no evidence was presented at trial, but denied Mr. Marroquin-Lopez's additional request to

14

redact paragraphs 1-2, 5-9, 14, and 30.  The district court submitted what remained of the indictment to the jury.  Mr. Marroquin-Lopez argues that the district court erred in denying his request for additional redaction.

We review a district court's denial of a motion to strike surplusage from an indictment before submission to a jury for an abuse of discretion.  *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971); *see also United States v. Massey*, 89 F.3d 1433, 1442 (11th Cir. 1996).  In *Massey*, we held that a district court did not abuse its discretion in providing an indictment to the jury that included racketeering acts of other codefendants.  *Massey*, 89 F.3d at 1442.  The defendant argued that the inclusion of his codefendants' wrongful acts prejudiced his case.  We disagreed, explaining that the additional allegations "merely aided the jury in 'explaining the context, motive and set-up' of the RICO conspiracy."  *Id.* (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).  In addition, the indictment specifically identified which defendant committed which acts.  *Id.*  And the district court provided a limiting instruction that the allegations in the indictment did not constitute evidence.  *Id.*  For these reasons, we concluded that the district court did not abuse its discretion.  *Id.*

As in *Massey*, the district court here did not abuse its discretion in denying Mr. Marroquin-Lopez's requests to redact the indictment before submitting the indictment to the jury.  Paragraphs 1-2, 5-9, and 14 of the indictment simply

15

explained the "context, motive, and set-up" of the MS-13 RICO enterprise. *Id.* (quoting *Williford*, 764 F.2d at 1499). Moreover, these allegations largely tracked the enterprise testimony of Bonilla, Delgado, and Lopez-Caal, which included background information such as MS-13's initiation process, its gang color identification method, the clique system, and the general acts of violence that MS-13 gang members have committed against rival gang members. As we concluded above, the district court did not err in admitting this testimony, which made clear that Mr. Marroquin-Lopez was not involved in several of the acts that served as the basis for this background information. Moreover, the district court instructed the jury that the indictment was not evidence of guilt. Thus, there was minimal danger of undue prejudice in including paragraphs 1-2, 5-9, and 14 in the indictment submitted to the jury, and the district court did not abuse its discretion in declining to redact these paragraphs.

The district court also did not abuse its discretion in declining to redact paragraph 30. In paragraph 30, the government alleged that Mr. Marroquin-Lopez "got into a fight with, and shot at, . . . a suspected rival gang member." Doc. 1 at 16. Testimony at trial supported that Mr. Marroquin-Lopez got into a fight with Gerson Morales, which ended when Mr. Marroquin-Lopez shot towards the ground, just a "few centimeters" from Marcos Morales's body. Thus, the allegation in paragraph 30 was largely consistent with the evidence presented at

16

trial and therefore not unduly prejudicial.  Further, while this allegation was the basis for dismissed Counts 28 and 29, paragraph 30 also alleged an overt act in furtherance of the conspiracy and was thus relevant to the conspiracy charge in Count 1.  And, as noted above, the district court specifically instructed the jury that the indictment was not evidence.

## C.

Finally, Mr. Marroquin-Lopez argues that the district court erred in applying a two-level aggravating role adjustment, pursuant to U.S.S.G. § 3B1.1(c).  "We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines to the facts *de novo*."  *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999).  Under clear error review, we will not disturb a district court's findings "unless we are left with a definite and firm conviction that a mistake has been committed."  *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010) (internal quotation marks omitted).  "[A] trial court's choice between 'two permissible views of the evidence' is the very essence of the clear error standard of review."  *United States v. Rodriguez De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) (quoting *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985)).  "So long as the basis of the trial court's decision is supported by the record *and* does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the

17

sentencing court's determination is clearly erroneous." *Id.* The credibility of a witness is in the province of the factfinder, and we do not ordinarily review the factfinder's determination of credibility unless the evidence "'is contrary to the laws of nature, or is so inconsistent or improbably on its face that no reasonable factfinder could accept it.'" *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quoting *United States v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993)).

Section 3B1.1(c) provides a two-level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in" the criminal activity. U.S.S.G. § 3B1.1(c). The commentary to section 3B1.1 sets out several factors for courts to consider in determining whether the defendant is an organizer or leader, including the following: (1) "the exercise of decision making authority"; (2) "the nature of participation in the commission of the offense"; (3) "the recruitment of accomplices"; (4) "the claimed right to a larger share of the fruits of the crime"; (5) "the degree of participation in planning or organizing the offense"; (6) "the nature and scope of the illegal activity"; and (7) "the degree of control and authority exercised over others." *Id.* comment. (n.4).

All of these factors need not be present. *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). Instead, these factors are "merely considerations for the sentencing judge." *Id.* (internal quotation marks omitted). Section 3B1.1 does, however, require "the exercise of some authority in the organization, the exertion

18

of some degree of control, influence, or leadership." *Id.* (internal quotation marks omitted).  Thus, we will uphold a section 3B1.1 enhancement when the convicted defendant "had decision-making authority and exercised control." *United States v. Suarez*, 313 F.3d 1287, 1294 (11th Cir. 2002).

"[O]nce a defendant objects to a fact contained in the PSI, the government bears the burden of proving that disputed fact by a preponderance of the evidence." *Martinez*, 584 F.3d at 1027.  The preponderance standard requires the government to present reliable and specific evidence.  *Id.*

The district court did not clearly err in determining that Mr. Marroquin-Lopez was subject to an aggravating role enhancement under section 3B1.1(c) because the preponderance of the evidence supported a finding that he asserted control over other gang members as the second leader of his clique.  Mr. Lopez-Caal testified that Mr. Marroquin-Lopez was the second leader of the Peewees clique who collected and kept track of money received at clique meetings.  The district court was free to credit this testimony, notwithstanding credibility issues with Mr. Lopez-Caal's other testimony.  *See Ramirez-Chilel*, 289 F.3d at 749.  According to Mr. Delgado, a second leader in MS-13 helped the first leader "make big decisions."  Doc. 1345 at 137.  Mr. Delgado's testimony that Mr. Marroquin-Lopez was not the leader of a different clique did not rebut Mr. Lopez-Caal's testimony that the defendant was a second leader of the Peewees.  And no other

19

evidence rebutted this testimony.  Moreover, testimony from other witnesses that Mr. Marroquin-Lopez gave gang members cocaine to sell and then shared in the profits further supports a finding that he exercised decision making authority with some degree of control over others in the gang.  For these reasons, the district court's finding that Mr. Marroquin-Lopez was a leader in MS-13 was not clearly erroneous, and thus the court did not err in applying the two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c).

**AFFIRMED.**