In the Supreme Court of Georgia

Decided:  May 23, 2016

S16A0064.  HOOD v. THE STATE.

NAHMIAS, Justice.

Appellant James Hood appeals his convictions for felony murder and

other crimes in connection with the stabbing death of Christopher Coon.  Two

of Appellant's three claims on appeal raise issues under Georgia's new Evidence

Code that this Court has not previously addressed.  Concluding that the trial

court committed no reversible error, we affirm.[1]

1.      Viewed in the light most favorable to the verdicts, the evidence

---

[1] Coon was killed on February 1, 2011.  On July 12, 2011, an Athens-Clarke County grand jury indicted Appellant and Briana Hood for malice murder, three counts of felony murder, possession of a controlled substance with intent to distribute, possession of a knife during the commission of a crime, aggravated assault, two counts of felony tampering with evidence, and giving a false statement.  Appellant and Briana were tried separately; the record does not indicate how the case against Briana was resolved.  At a trial from February 25 to March 1, 2013, the jury found Appellant guilty of all charges except for the two counts of felony tampering with evidence; he was found not guilty on one of those counts and guilty of misdemeanor evidence tampering on the other.  On July 11, 2013, the trial court sentenced Appellant to serve life in prison for malice murder, ten consecutive years for the controlled substance offense, five more years for the knife charge, 12 concurrent months for misdemeanor evidence tampering, and five consecutive years for the false statement.  The remaining verdicts were vacated or merged.  On July 12, 2013, Appellant filed a motion for new trial, which he amended on November 24, 2014, and which the trial court denied on April 2, 2015.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

presented at trial showed the following. Shortly after midnight on February 1, 2011, Coon called his friend Shane Harrelson to pick him up to hang out together. While they were driving around Athens, Coon asked Harrelson if he knew anyone who had prescription pain pills for sale. Harrelson gave Appellant's phone number to Coon, who called Appellant at 3:09 a.m. and said he was on his way to Appellant's house to buy pills. Harrelson parked around the corner from Appellant's house and stayed in the car while Coon went to the house. Coon had several hundred dollars in his possession.

At 3:31 a.m., Appellant's wife, Briana Hood, called 911 to report that a man had broken into their house and that "[t]his dude tried to run out with our pills and I stabbed him." When police officers arrived at the house, they found Coon lying face down by the front door with stab wounds on his neck, chest, and abdomen. There was a pair of brass knuckles on the ground near Coon, and Briana said that Coon had punched her with them; her nose was broken. Appellant had broken toes on one foot and blood on his hands and arms. There were bloodstains in the living room by the front door, but the rest of the first floor was orderly and showed no signs of a disturbance. The police found bloodstained oxycodone pills and cash hidden in Appellant's upstairs bedroom.

2

They also found multiple bottles of pain pills, including oxycodone, which had been prescribed to Appellant by multiple doctors for his sickle cell anemia.

Coon was taken to the hospital but was dead on arrival. An autopsy determined that he had been stabbed five times and that the wounds to his neck and lower abdomen were fatal injuries. The medical examiner was unable to sequence the stab wounds or to determine whether more than one knife was used. Coon had defensive wounds, and his blood tested positive for oxycodone, amphetamine, and methamphetamine.

A few hours after the stabbing, Appellant and Briana went to the police station to give statements. Sergeant Jerry Saulters interviewed Briana first, then Appellant. Sgt. Saulters found that their stories were inconsistent, so he interviewed them each again and had them make written statements.[2] In his statements that day, Appellant said the following. He and Briana were in bed upstairs when they heard a knock on their front door, which Appellant went downstairs to answer. When he saw no one through the peephole, Appellant began to open the door. Coon then forced his way inside, breaking Appellant's

_____

[2] Briana's statement was not admitted and she did not testify at Appellant's trial.

bare toes with the door. Coon began punching Briana with brass knuckles and saying "where are the pills?" Coon then grabbed a bottle of pills off Appellant's coffee table and ran. Appellant and Briana fought with Coon to get the pills back; the fight began in the living room, moved to the kitchen when Coon tried to leave through the back door, and then moved back to the living room. Briana stabbed Coon when they were back in the living room by the front door. In his first interview, Appellant said that only Briana had stabbed Coon, and in his second interview Appellant said that Briana had both knives, but in his written statement he admitted that he also had a knife. Appellant denied having a cell phone. He and Briana were allowed to go home after their interviews.

The next day, Appellant came back to the police station, asking for the police to return the oxycodone pills found at his house, but the officers explained that they could not release that evidence. Appellant then agreed to walk the police through his house to explain what happened during the encounter with Coon. His story remained largely consistent, except that he mentioned the money the police had found hidden in his bedroom for the first time, saying first that it was his money but then that it might have been the victim's. At the end of the walk-through, Appellant gave the officers a contact

4

cell phone number, which was the number Coon had used to call Appellant.

A few days later, Appellant and Briana went to the police station and asked to speak to Sgt. Saulters. The officer went over Appellant's prior written statement with him and noted inconsistencies with the crime scene and Briana's statement. Appellant initially stuck to his home invasion story, but he eventually conceded that the story was false and admitted that Coon came to the house to buy prescription drugs. Appellant then gave the following new account of what happened that night. He did not know Coon, so he put an opened folding knife in his back pocket before letting Coon into the house. When Coon came inside, he asked Appellant for 20 pills, which Appellant went upstairs to retrieve. Appellant and Coon then began counting out the pills and money at the kitchen table. When Coon disputed the price for the pills, an argument began. Coon refused to pay Appellant, took the pills, and ran toward the front door. Appellant and Briana outran Coon to the door, locked it, and began fighting with him. Both Appellant and Briana had knives, while Coon was unarmed. After the fight, Appellant planted the brass knuckles near Coon's body and hid the bloodstained pills and cash upstairs before emergency personnel arrived.

When viewed in the light most favorable to the verdicts, the evidence

5

presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.    Appellant contends that the trial court erred by refusing to allow him to recall Sgt. Saulters to testify about a prior inconsistent statement made by Erin Kaiser. Pretrial investigation by Appellant's counsel showed that Kaiser, an acquaintance of Coon, had given a statement to Sgt. Saulters about a prior incident when Coon stole pills from a different prescription pill dealer. At trial, Kaiser was called by Appellant and testified that on December 31, 2010, she drove Coon and another person who had money to the pill dealer's home. Coon and the other person then stole pills from the dealer and returned to her car. As they drove away, they were chased by the dealer. On redirect examination, Appellant asked Kaiser if she remembered telling Sgt. Saulters that Coon's accomplice came along to show the dealer that they had money to buy the pills

6

and that once they showed the money, Coon stole the pills and ran out of the house. Kaiser said she did not remember saying that because she was under the influence of drugs when she gave the statement to Sgt. Saulters. Appellant then asked to recall Sgt. Saulters to testify to the content of Kaiser's statement. The trial court denied the request, ruling that Kaiser's statement was "collateral."

Georgia's new Evidence Code took effect on January 1, 2013, less than three months before Appellant's trial began. On the issue of admitting extrinsic evidence of a witness's prior inconsistent statement, OCGA § 24-6-613 (b) substantially adopted the language of Federal Rule of Evidence 613 (b) as it read in 2011; to the extent the new Georgia evidence rules borrow from the text of the federal evidence rules in this way, we look for guidance to the decisions of federal appellate courts, particularly the Eleventh Circuit, interpreting the federal rules. See State v. Frost, 297 Ga. 296, 299 (773 SE2d 700) (2015). See also Parker v. State, 296 Ga. 586, 592 & n.10 (769 SE2d 329) (2015).

The failure of a witness to remember making a statement, like the witness's flat denial of the statement, may provide the foundation for calling another witness to prove that the statement was made. See United States v. Billue, 994 F2d 1562, 1565-1566 (11th Cir. 1993). However, federal courts

7

including the Eleventh Circuit have also held – as Georgia courts did under our old Evidence Code – that prior inconsistent statements cannot be introduced through extrinsic evidence if they are irrelevant or collateral to the subject matter of the case. See, e.g., United States v. Russell, 717 F2d 518, 520 (11th Cir. 1983) ("The Federal Rules of Evidence discourage the admission of extrinsic evidence to prove or disprove issues which are collateral to the subject matter of the case."); United States v. Roulette, 75 F3d 418, 423 (8th Cir. 1996) ("[U]nder [Rule] 613 (b) a witness may not be impeached on a collateral matter by use of extrinsic evidence of prior inconsistent statements."). See also Wynn v. State, 272 Ga. 861, 862 (535 SE2d 758) (2000) (affirming the exclusion of a prior inconsistent statement under the old Evidence Code because it "was irrelevant to the issues to be considered by the trier of fact" (citing Duckworth v. State, 268 Ga. 566, 567 (492 SE2d 201) (1999))). Thus, although aspects of Georgia's Evidence Code dealing with prior inconsistent statements used to impeach have changed, the principle that such statements may not be introduced to impeach a witness on collateral matters remains intact. See Paul S. Milich, Georgia Rules of Evidence § 14:3, at 437 (2015-2016 ed.).

This case does not require us to precisely draw the line between collateral

and material issues. Even assuming that Kaiser's statement to Sgt. Saulters regarding exactly how the previous theft of pills transpired, including the detail that Coon and his accomplice showed money to the pill dealer before taking the pills and running away, was not collateral but instead was relevant to whether Coon was attempting to steal oxycodone pills from Appellant before he was stabbed to death, the exclusion of that statement was harmless. The additional detail would have added very little to the testimony Kaiser had already given, which established that Coon had been involved in a similar pill theft a month before his encounter with Appellant and Briana, and the other evidence of Appellant's guilt was strong. See Slaughter v. State, 292 Ga. 573, 577-578 (740 SE2d 119) (2013); Pugh v. State, 323 Ga. App. 31, 35 (747 SE2d 101) (2013).

3.      On redirect examination, the prosecutor asked Sgt. Saulters, "In the course of your investigation, did you find any evidence that [Briana] was afraid of violence from [Appellant]?" Saulters answered, "Yes." Appellant immediately objected and requested a mistrial on the ground that the question and answer impermissibly placed Appellant's character into evidence. The trial court sustained the objection and indicated that it was willing to give a curative instruction, but Appellant maintained that a "mistrial would be the only cure."

9

The court then declined to grant a mistrial, which Appellant contends was reversible error.[3]

We disagree. When prejudicial matter is improperly put before the jury, "a mistrial is warranted only if essential to preserve a defendant's right to a fair trial, and the trial court is vested with broad discretion in making this determination." Mister v. State, 286 Ga. 303, 306 (687 SE2d 471) (2009). Assuming that the objection to this brief exchange was properly sustained, the jury was twice instructed that the attorney's questions were not evidence, and Saulters's answer consisted of a mere "yes"; he did not explain his answer or elaborate on the subject. Moreover, as outlined in Division 1 above, there was ample evidence that Appellant and Briana worked together to assault and kill Coon and to try to cover up the crimes, and Appellant rejected the court's offer of a curative instruction. Under these circumstances, the trial court's denial of Appellant's motion for a mistrial was not an abuse of discretion.

4.    Finally, Appellant contends that the trial court erred when it allowed

---

[3] The prosecutor had a good-faith basis for the question, as the police had found a diary and letter written by Briana suggesting that Appellant had been abusive toward her; however, the State did not seek to admit those items. The State argued to the trial court that Appellant had opened the door to this question by asking Sgt. Saulters on cross-examination about Briana's broken nose as a way to imply that Coon had broken it.

10

the State to introduce evidence of other acts by him under OCGA § 24-4-404 (b), in the form of testimony by Heather Werner and Zachary Campbell that they each purchased prescription pain pills from Appellant on numerous occasions. At a pretrial hearing, the trial court ruled over Appellant's objection that this evidence was admissible, and before the two witnesses testified at trial the court instructed the jury that the testimony was "offered for the limited purpose of showing, if it does show and you so find, the intent of the Defendant as it relates to the possession of drugs with the intent to distribute." We will overturn a trial court's decision to admit other acts evidence only where it was a clear abuse of discretion. See State v. Jones, 297 Ga. 156, 159 (773 SE2d 170) (2015). As explained below, we conclude that the trial court did abuse its discretion in admitting this Rule 404 (b) evidence, but the error was harmless.

Under OCGA § 24-4-404 (b), which in pertinent part mirrors the text of Federal Rule of Evidence 404 (b) as of 2011, "evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of . . . intent . . . ." Again following the Eleventh Circuit's lead, Georgia courts evaluate the admissibility

11

of Rule 404 (b) evidence using a three-part test that requires the party offering the evidence to show that "(1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the [other] act." Brannon v. State, Case No. S15A1724, 2016 WL 867555, at *4 (Mar. 7, 2016).

There is no dispute that the third part of this test was satisfied by Werner's and Campbell's uncontradicted testimony that Appellant had sold each of them prescription pills. As for the first and second parts of the test, it is important to distinguish between the *relevance* and the *probative value* of the other acts evidence in question; the first part of the test deals with relevance, while the second part deals with probative value. See Olds v. State, ___ Ga. ___ (Case No. S15G1610, decided May 23, 2016), slip op. 19-20 (explaining the difference between relevance and probative value).

Under OCGA § 24-4-401, "relevant evidence" is broadly defined as evidence that "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

12

than it would be without the evidence." The testimony of Werner and Campbell was relevant to the issue of Appellant's intent with respect to the oxycodone pills found in his house. Appellant was charged with possessing those pills with the specific intent to distribute (i.e., sell) them, as well as felony murder based on that crime, and the State was required to prove his intent to sell the pills beyond a reasonable doubt. Because Appellant's charged drug crime required the same intent as that involved in his uncharged sales of prescription pills to Werner and Campbell, their testimony about those sales was relevant. See Jones, 297 Ga. at 160-161 (holding that the other act evidence was relevant to show the defendant's intent "because the same state of mind was required for committing the prior act and the charged crimes"). See also Olds, slip op. at 13.

We have indicated, however, that a defendant can sometimes remove intent as an issue. See Jones 297 Ga. at 161 n.4 ("[A] defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State."). Appellant argues that he withdrew the element of intent in this case because he offered to stipulate that he had committed the crime of possession of a controlled substance with intent to distribute. The State, however, rejected his offer to stipulate, which the State

13

was entitled to do. The State retains broad control over how to present its case, so a defendant cannot always keep out damaging evidence simply by offering to stipulate to the element of a crime that such evidence would tend to prove. See Old Chief v. United States, 519 U.S. 172, 186 (117 SCt 644, 136 LE2d 574) (1997) (explaining that the "familiar, standard rule" is that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it"). See also State v. Dixon, 286 Ga. 706, 708 (691 SE2d 207) (2010). An unaccepted offer to stipulate does not eliminate the *relevance* of other acts evidence, because it does not "lift the Government's burden of proving" every element of the crimes charged. United States v. Hill, 249 F3d 707, 712 (8th Cir. 2001). See also Old Chief, 519 U.S. at 179.[4]

---

[4] Before Old Chief, the Eleventh Circuit held in several cases that "if the defendant unequivocally removes intent, as through a stipulation, the extrinsic act evidence cannot be admitted for the purposes of proving intent." United States v. Williford, 764 F2d 1493, 1498 (11th Cir. 1985). See also United States v. Taylor, 17 F.3d 333, 338 (11th Cir. 1994) ("[W]here the defendant offers to stipulate to the issue the government seeks to prove, evidence of prior convictions is inadmissible."). Although the Eleventh Circuit has not overruled those cases since Old Chief, it has recognized, as have most of the other federal circuits, that Old Chief clarifies that an offer to stipulate to an issue does not eliminate the relevance of the issue under Rule 401 but rather is one factor that the court should consider in making the determination under Rule 403. See United States v. Marroquin-Lopez, ___ Fed. Appx. ___, Case No. 15-10579, 2015 WL 9094035, at *6 (11th Cir. Dec. 16, 2015). See also Hill, 249 F3d at 710-714 (citing decisions from the Fourth, Sixth, Seventh, and D.C. Circuits). We agree with this view of Old Chief.

The second part of the Rule 404 (b) test – the part that looks to the probative value of evidence determined to be relevant – requires analysis of the other acts evidence under OCGA § 24-4-403, which mirrors Federal Rule of Evidence 403 and is interpreted accordingly. See Brannon, 2016 WL 867555, at *4. Under Rule 403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We have noted that the trial court's discretion to exclude evidence under Rule 403 "'is an extraordinary remedy which should be used only sparingly.'" Jones, 297 Ga. at 164 (quoting United States v. Merrill, 513 F3d 1293, 1301 (11th Cir. 2008)). The "major function" of Rule 403 is to "'exclud[e] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" United States v. Utter, 97 F3d 509, 514-515 (11th Cir. 1996) (citation omitted).

In this case, the probative value of Appellant's drug transactions with Werner and Campbell was extremely low. A rejected offer to stipulate to an issue does not render evidence on that issue irrelevant, but it must be considered under Rule 403, because the availability of the stipulation diminishes the

15

probative value of the extrinsic evidence.  See <u>Old Chief</u>, 519 U.S. at 183;

<u>United States v. Marroquin-Lopez</u>, ___ Fed. Appx. ___, Case No. 15-10579,

2015 WL 9094035, at *6 (11th Cir. Dec. 16, 2015).  The decrease in probative

value was significant here, as Appellant offered to stipulate *unconditionally* that

he committed the *entire* charged crime of possessing oxycodone with intent to

distribute.  Compare <u>United States v. Crowder</u>, 141 F3d 1202, 1210 (D.C. Cir.

1998) (concluding that the evidence of prior bad acts was admissible

notwithstanding an offered stipulation where "the proposed stipulations were

ambiguous, conditional and tentative" and went only to one or two particular

elements of the crimes charged).

Further diminishing the probative value of the drug-buyers' testimony is

the fact that even though the stipulation offer was rejected by the State, defense

counsel said in his opening statement: "I'm not going to stand up here and ask

you to return a verdict of not guilty [on the drug charge,] because [Appellant]

did possess medication, and at least on the night of February 1, 2011, he

possessed it believing that Chris Coon was coming there to buy it."  Then in

closing argument, defense counsel reiterated that Appellant became addicted to

his pain medication "and unfortunately, [he] started to sell some," and told the

16

jury directly: "Possession with intent to distribute, you're authorized to return a verdict of guilty on that. [Appellant] had the drugs and he possessed them with the intent to distribute." Moreover, in discussing the drug charge in his closing argument, the prosecutor explained: "You've seen the drugs, you've seen the pills, they're really not in dispute. [Defense counsel] is open, he said they concede that." Thus, both the prosecution and the defense recognized and expressly told the jury that Appellant did not dispute that he possessed and intended to distribute oxycodone as charged.

Of course, the State, because it rejected the formal stipulation, was still required to prove with evidence, rather than only attorney argument, that Appellant committed the crime. But the evidence proving this uncontested point was abundant without the two drug-buyers' testimony. Appellant did not testify at trial, but his statement to the police admitting that he was going to sell pills to Coon on the night of the stabbing was played for the jury. Harrelson also testified, without contradiction or objection, that Appellant regularly sold pills and that Harrelson would send people to Appellant's house to buy drugs. And bloodstained oxycodone pills and money were found hidden in Appellant's house. Werner's and Cambell's testimony on the issue of Appellant's intent was

cumulative, and Appellant's undisputed guilt of the drug crime could have been established just as effectively through this other evidence and his stipulation.

In this way, this case is different from the many cases in which evidence going to the same point as an offered stipulation retains significant probative value because it helps complete the story of the events resulting in the crimes charged. See Old Chief, 519 U.S. at 183 (explaining that courts must apply Rule 403 "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case"). A bare offer to stipulate to an element will often leave holes in the narrative that handicap the State as it attempts to meet its high burden of proof. See, e.g., United States v. Pedroza, 750 F2d 187, 201 (2d Cir. 1984) ("Although defendants' offer to stipulate might have lessened the government's need for extensive evidence of the antecedent cocaine transaction, a bare stipulation that the ransom demanded was narcotics hardly sufficed to provide an understandable backdrop for the rather unusual theories offered to explain the events."). A proposed stipulation to a single element of a crime that the defendant otherwise claims that he did not commit may also be confusing for the jury, which must then figure out which elements of the crime are left to be determined and when and how the limited stipulation

18

applies. See Crowder, 141 F3d at 1204.

Werner's and Campbell's testimony, however, filled no narrative holes. The fact that Coon was at Appellant's house because Appellant was planning to sell Coon drugs certainly enhances the picture of the events leading to Coon's death. Even the fact that Appellant had previously sold drugs to people sent to him by Harrelson helps make sense of Coon's path to Appellant's door. As described above, however, all of this was presented through Appellant's statement and Harrelson's testimony. Werner and Campbell, on the other hand, had no connection to Coon or Harrelson and testified only that Appellant had repeatedly sold drugs to them under different circumstances during the year before Coon's death.[5] Werner and Campbell did not complete the picture of what happened on the night Coon died; their testimony expanded the picture to depict Appellant as a frequent and degenerate drug dealer.

Doing so was unfairly prejudicial, meaning it had an "undue tendency to

---

[5] Werner, who was allowed to testify that she had a college degree and a job as a senior graphic designer before her drug addiction caused her to lose her job and start stealing from her parents, explained that she was introduced to Appellant through another friend and that she would call Appellant or he would call her to set up drug transactions, which were usually at his home and during the daytime. Campbell testified that he was friends with Appellant; he would buy drugs from Appellant, and they would use drugs together.

suggest a decision based on an improper basis." Fed. R. Evid. 403, advisory committee's notes. Although the limiting instruction properly given by the trial court reduced the prejudicial impact of Werner's and Campbell's testimony, their testimony showing that Appellant conducted illegal drug deals not just with Coon or those Harrelson referred, but with multiple people on a regular basis, had a tendency to suggest that Appellant should be convicted because he was a seasoned drug dealer, the kind of man who preys on people's addictions, who repeatedly breaks the law, and who deserves to be punished.

> One of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense. This danger is particularly great where, as here, the extrinsic activity was not the subject of a [prior] conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.

United States v. Beechum, 582 F2d 898, 914 (5th Cir. 1978) (citation and footnote omitted).

In sum, with regard to the two drug buyers' testimony, there was virtually nothing on the probative value side of the Rule 403 balance, and something not insubstantial on the prejudice side. See United States v. Spletzer, 535 F2d 950, 956 (5th Cir. 1976) ("[W]hatever slight cumulative probative value can be

ascribed to the [extrinsic evidence] was substantially outweighed by its danger of creating prejudice."). See also Beechum, 582 F2d at 914 ("[I]f the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily."). Under the circumstances of this case, the trial court abused its discretion by admitting Werner's and Campbell's testimony about Appellant's past drug deals.

This evidentiary error was, however, clearly harmless. As summarized in Division 1, the evidence that Appellant committed the crimes for which he was convicted was strong, making it highly unlikely that the jury convicted him based on his other drug dealing activities. Additionally, as explained above, Appellant's statement, Harrelson's testimony, and the bloodstained pills and money demonstrated that Appellant committed the crime of possessing a controlled substance with intent to distribute, a conclusion that he did not dispute, and Harrelson's testimony established that Appellant had dealt similar drugs on other occasions to people other than the victim. Accordingly, "it is highly probable that the error did not contribute to the verdict." Peoples v. State, 295 Ga. 44, 55 (757 SE2d 646) (2014). See also Lingo v. State, 329 Ga. App. 528, 533 (765 SE2d 696) (2014) (physical precedent only) (holding that

21

the admission of evidence in violation of Rule 403 was harmless given the other strong evidence that the defendant committed the charged crimes); United States v. Bilderbeck, 163 F3d 971, 978 (6th Cir. 1999) (holding, in the alternative, that even assuming that the other acts evidence was inadmissible under Rule 403, "its admission would constitute harmless error in light of other proper and persuasive evidence concerning the same past acts").

Judgment affirmed. All the Justices concur.